# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### ESTERN DIVISION

| | | |
|---|---|---|
| PETER GAKUBA, | ) | Case No. 11CV9090 |
| | ) | |
| | ) | Judge John Z. Lee |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BARRY KAUTHER (IT10, Itasca Police Officer "IPO"); | ) | THIRD Amended Complaint |
| TIMOTHY MACE (IPO, IT21); | ) | |
| MICHAEL WALKER (IPO, IT41); | ) | |
| MICHAEL MICHELA (IPO, IT114; | ) | |
| ROBERT O'CONNER (IPO, IT101), | ) | |
| MICHAEL PAUP; (IPO) | ) | |
| GERALD RAGUSIN; (IPO) | ) | |
| CARA PAYNE; (IPO) | ) | |
| Individually and Officially, and, | ) | |
| the VILLAGE OF ITASCA; | ) | |
| DUPAGE CONTY, ILLINOIS; | ) | |
| JABRON SANDIFER, Hotel Manager, | ) | |
| JESSICA NAYMOLA, Hotel Manager, | ) | |
| HVM L.L.C. (d/b/a Extended Stay America); | ) | |
| ESA P Portfolio L.L.C. (d/b/a Extended Stay America) | ) | |
| "JOHN and JANE DOES" 1 through 25; | ) | |
| | ) | |
| Defendants. | ) | Jury Trial Demand |

## CIVIL RIGHTS, TORT, AND BREACH OF CONTRACT COMPLAINT

Plaintiff PETER GAKUBA, for his complaint against BARRY KAUTHER ("Kauther");

TIMOTHY MACE ("Mace"); MICHAEL WALKER ("Walker"); MICHAEL MICHELA

("Michela"); ROBERT O'CONNER ("O'Conner"); MICHAEL PAUP ("Paup"); GERALD

RAGUSIN ("Ragusin"); CARA PAYNE ("Payne"); Individually and Officially; the VILLAGE

OF ITASCA; DUPAGE COUNTY, ILLINOIS (collectively the "Police Defendants"); JABRON

SANDIFER ("Sandifer"); JESSICA NAYMOLA ("Naymola"); HVM L.L.C. ("HVM"); ESA P

PORTFOLIO L.L.C. ("ESA") (collectively the "Hotel Defendants"); JOHN and JANE DOES 1 through 25; alleges the following upon information and belief, which are based on personal knowledge and after due investigation:

## I.     INTRODUCTION

1.      On August 12, 2010 through and unto October 12, 2011 Defendants Itasca Police Officers ("IPOs") Kauther, Mace, Walker, Michela and O'Connor, the Village of Itasca, Dupage County, Sandifer (hotel manager) and HVP L.L.C., whom employed Sandifer, and ESA P Portfolio L.L.C. (d/b/a the Extended Stay America, Inc.),  whom owned the hotel property where these matters took place, conspired to and perpetuated 4th Amendment and 14th Amendment violations of Plaintiff Peter Gakuba ("Gakuba"). (U.S. Constitution)

2.      On January 14, 2012 unto the present, the Police Defendants have conspired to and are perpetuating a malicious prosecution against Plaintiff's witness, private process server and affiant, by falsifying a traffic violation citation. Provoked by Plaintiff photographing Paup and Ragusin with a mobile phone camera, stalking and intimidating him and his witness, Christopher Juth ("Juth"), the Police Defendants have now witness tampered, obstructed justice and committed acts of official misconduct for no lawful purpose whatsoever.

3.      On January 15, 2012 the Police Defendants conspired and perpetuated the illegal conduct of the false traffic violation citation, having attached a GPS tracking device to Plaintiff's vehicle at that time -- then mysteriously appearing at Plaintiff's private residence the very next day; whereupon, they stalked and witness tampered Plaintiff some more, as Plaintiff now was a witness in the state traffic court case against Plaintiff's witness (Juth) who is material in this federal civil rights case.

4.      On or about January 2010 Sandifer, HVP and ESA breached their contract with Plaintiff in introducing scabies to hotel room linens and/or towels provided to the Plaintiff that resulted in battery, among other tort acts. Hotel defendants denied Plaintiff's insistence to terminate his lease agreement and obtain a partial refund so that he may live elsewhere; instead offering merely to move him to another room.

5.      On or about October 2011 unto December 2011, Naymola (hotel manager) and HVP L.L.C., whom employed Naymola, and ESA P Portfolio L.L.C. (d/b/a the Extended Stay America, Inc.), whom owned the hotel property where these matters took place, breached a "Guaranteed Reservation Policy" that they had entered into with the Plaintiff.  They asserted that Plaintiff posed a "problem;" Plaintiff having been victimized by a scabies infection, and repeated illegal room intrusions and invasions of privacy, at a different property of theirs that culminated in Plaintiff's constructive, and subsequently actual, eviction.

6.      Plaintiff Gakuba is an African-American male.   Hotel defendants had no reasonable or rational basis to purposely and flagrantly breach their own "Guaranteed Reservation Policy" whatsoever.  It was predicated on racial prejudice in violation of the federal Fair Housing Act and Public Accommodations Act.

## II.     JURISDICTION AND VENUE

7.      This court has jurisdiction over this civil rights action, brought pursuant to 42 U.S.C. § 1983, et seq. and the United States Constitution and under 28 U.S.C. §§ 1331 and 1343(a).

8.      This court also has supplemental jurisdiction over the state law claims, under 28 U.S.C. § 1367(a).

9.     Venue is proper under 28 U.S.C. § 1391(b), as the parties reside, or, at the time the events took place, formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

10.     Venue is proper under 28 U.S.C. Section 1343(4), Section 2201 and/or 42 U.S.C. Section 3513 under the Fair Housing Act as it pertains to the Hotel Defendants.

## III.     PARTIES

11.     Plaintiff Peter Gakuba is a forty-two year old African-American man, a homeless resident of Cook County, and a citizen of the United States.

12.     Defendant Barry Kauther is a duly appointed and sworn Itasca Police Officer.

13.     Kauther was acting in the scope of his employment at all times material to this complaint and is sued in his individual capacity.

14.     Defendant Timothy Mace is a duly appointed and sworn Itasca Police Officer.

15.     Mace was acting in the scope of his employment at all times material to this complaint and is sued in his individual capacity.

16.     Defendant Michael Walker is a duly appointed and sworn Itasca Police Officer.

17.     Mace was acting in the scope of his employment at all times material to this complaint and is sued in his individual capacity.

18.     Defendant Michael Michela is a duly appointed and sworn Itasca Police Officer.

19.     Michela was acting in the scope of his employment at all times material to this complaint and is sued in his individual capacity.

20.     Defendant Robert O'Connor is a duly appointed and sworn Itasca Police Officer.

21.     O'Connor was acting in the scope of his employment at all times material to this complaint and is sued in his individual capacity.

22.     Defendant Michael Paup is a duly appointed and sworn Itasca Police Officer.

23.     Paup was acting in the scope of his employment at all times material to this complaint and is sued in his individual capacity.

24.     Defendant Gerald Ragusin is a duly appointed and sworn Itasca Police Officer.

25.     Ragusin was acting in the scope of his employment at all times material to this complaint and is sued in his individual capacity.

26.     Defendant Cara Payne is a duly appointed and sworn Itasca Police Officer.

27.     Payne was acting in the scope of his employment at all times material to this complaint and is sued in his individual capacity.

28.     The Defendant Officers are sued in their individual and official capacities.

29.     Defendant Dupage County is a governmental entity within the State of Illinois, which consists in part of the Village of Itasca.

30.     At all relevant times, Dupage County and the Village of Itasca were responsible for the policies, practices, and customs of the Itasca Police Department and the police defendants working therein.

31.     Defendant Village of Itasca is a governmental entity within the State of Illinois, which consists in part of its Itasca Police Department.

32.     At all times relevant to this action, Dupage County, the Village of Itasca and the Itasca Police Department were responsible for the policies, practices, and customs of the Itasca Police Department and the police officers working therein.

33.     At all times relevant to this action, each of the named Police Defendants were state actors that acted in the scope of his employment, and under the color of the laws, regulations, and customs of the State of Illinois.

34.     At all times relevant to this action, Defendants Sandifer, HVP and ESA were state actors that acted in the scope of either his employment or lodging contract, and under the color of the laws, regulations, and customs of the State of Illinois by conspiring with Defendant Officers to violate Plaintiff Gakuba's constitutionally protected rights.

35.     Each Defendant's actions constituted "state action" as defined under federal law.

36.     Defendant Sandifer was employed, and continues to be employed, with HVP L.L.C. and ESA P Portfolio L.L.C. (d/b/a Extended Stay America, Inc.) in Itasca, Illinois. Sandifer was a state actor under the color of law.

37.     Defendant Sandifer pursuant to Defendants' Kauther, Walker and Mace police orders and under color of authority, violated Plaintiff Gakuba's 4th Amendment rights, invaded his privacy, illegally seized his private hotel room residence, and disclosed his social security number and date-of-birth.

38.     Defendant Sandifer was an active participant and his involvement as a co-conspirator with the IPOs constituted "state action" as defined under federal law, and under the color of the laws, regulations, and customs of the State of Illinois and complained herein.

39.     Defendant Jessica Naymola is employed as hotel manager for HVP and ESA, in Schaumburg, Illinois.

40.     Defendant Naymola violated both the federal and state Fair Housing Act, as well as the federal and state Public Accommodations Act, in discriminating against Plaintiff Gakuba by canceling a bona fide reservation because he was a "problem" being African-American. Additionally, Naymola and her employer HVP and/or ESA violated federal and state consumer fraud laws and committed defamation of character.

41.     Defendants HVP and ESA are hospitality / hotel establishments in the State of Illinois.  HVP, ESA, and their personnel, were state actors acting under the color of law.

42.     Defendants HVP and ESA,. at all times relevant to this action, were responsible for the policies, practices, and customs of Defendants Sandifer and Naymola.

43.     Defendants HVP and ESA at all times relevant to this action, acted within the scope of a state actor and under the color of the laws, regulations, and customs of the State of Illinois.

44.     Upon information and belief, Defendants John and Jane Does 1 through 25 ("the Individual Defendants") are individuals whose names and addresses of residences are unknown.

45.     Upon information and belief, Defendants John and Jane Does 1 through 25 are employees of Defendants HVP and ESA, the Village of Itasca, and/or Dupage Couny and are collectively referred to as the Defendants.

## IV.     FACTUAL STATEMENTS

### A.     The Unlawful Hotel Room Entry, Invasion of Privacy, and Falsified Grand Jury Investigation

46.     Plaintiff Gakuba's private residence was a lawfully rented room at the Extended Stay America, Inc. at 1181 North Rohlwing Road, Itasca, IL 60143 at the time of the events that gave rise to this complaint.

47.      On or about March 2011 and again in September of 2011, in fear of his safety by the named Defendants in this Complaint, Plaintiff moved to another private residence away from Itasca, Illinois.

48.    Hotel Defendants gave no prior warning or disclosure in any written or oral agreement that Plaintiff's privacy would be repeatedly invaded and violated at the discretion of the Defendants'.

49.    On August 12, 2010 Defendants Sandifer and Kauther entered Plaintiff Gakuba's privately occupied hotel room residence.

50.    Plaintiff Gakuba refused them entry, stating that "I am fine, thank you" when Defendants announced their presence outside his door.

51.    Defendants Kauther and Sandifer ignored Gakuba's reply to their announcement and entered Gakuba's hotel room residence without his consent.

52.    Defendants Kauther and Sandifer refused to leave Gakuba's privately occupied residence without obtaining a signed written waiver of liability form.

53.    Plaintiff Gakuba was given no option to refuse.

54.    Defendants' (Kauther and Sandifer) conduct was illegal; constituting a HOME INVASION (720 ILCS 5/12-11) as defendants were not acting in the line of duty, and intentionally caused the injury of emotional distress upon Gakuba.

55.    On March 5, 2011 Defendant Officers Walker, Kauther and Mace conducted an investigation into a false police report by two mentally disturbed 18 year olds.

56.    Defendant Kauther sought entry into Plaintiff Gakuba's private residence, while Gakuba was not home.

57.    John Judice ("Judice") was the front-desk hotel clerk at the time of Kauther's attempted unlawful entry.

58.    Judice indicated he was hesitant to allow Kauther to illegally enter a private residence without the occupant's consent, or, any warrant.

59.     Kauther then demanded and ordered Judice to change the door lock on the front door of Gakuba's private residence.  Judice, with two aggressive police officers abusing their authority and powers, was given no chance to refuse.

60.     Kauther succeeded in his demands and illegal seizure of Gakuba's private residence.

61.     Kauther, Walker and Mace conspired to falsely arrest and falsely imprison Gakuba through the unlawful seizure, and actual and constructive eviction of Gakuba from his hotel room, hoping to arrest Gakuba in a public place; without court or judicial intervention necessitating probable cause to affect a search or arrest warrant authorized by a magistrate judge.

62.     Defendants Sandifer and the HVP and ESA P Portfolios were grossly negligent in failing to properly train and supervise their hotel employees on both constitutional law (4th and 14th Amendment violations) and tort law (actual and constructive eviction, and, tortuous interference).

63.     Defendants Sandifer and HVP and ESA P Portfolios invaded Gakuba's privacy by disclosing his occupancy in Room 221; disclosing his social security number; disclosing his date-of-birth; disclosing what automobile he drove (license plate number, VIN number, year, make and model) to the public without a court order, subpoena, or warrant.  Established law dictates that police officers are no different than door-to-door salespeople; and the option to decline to speak with them, or any other form of conversation, is clear and evident.  Without a court order, warrant, or subpoena, the information disclosed and shared amongst the Defendants was an abhorrent invasion of Gakuba's privacy.

64.     On March 5, 2011, Plaintiff Gakuba was telephoned by the front-desk hotel clerk of the IPOs' investigation and illegal seizure of his hotel room.  Gakuba instructed that the door

locks be restored as the IPO's conduct was *ILLEGAL*. Furthermore, Gakuba instructed the hotel front-desk to advise Defendant Officers Kauther, Walker, and Mace to telephone Gakuba or Gakuba's lawyers – Beau Brindley of Chicago or David Shapiro of Baltimore.

65. Mr. Judice complied with Gakuba's instructions and restored the door locks and advised the IPOs that they may telephone Gakuba or his lawyers if they wished to speak with him concerning their investigation.

66. Defendant IPOs Kauther, Walker and Mace ignored Judice's advice. Instead, they waited in ambush outside the hotel all night; conspiring to falsely arrest, falsely imprison and illegally seize Gakuba in public.

67. Mr. Gakuba, in a state of acute emotional distress, was advised by telephone by his lawyers not to return to his lawfully occupied residence. Mr. Gakuba, in fear that the IPOs' conspiracy to falsely arrest and imprison him would involve them sweeping through all the hotels in the proximate vicinity, lived in his car that day and the subsequent day – in cold wintery weather.

68. Despite the false accusations of "battery" in a falsely induced police report, the IPOs did not charge the reporters with a crime. Instead, they omitted this fact from an asst. Illinois attorney general and misrepresented Gakuba as having a criminal history.

69. At the behest of the IPOs, a grand jury was convened to investigate Gakuba for possible internet crimes. The grand jury investigation was closed on June 25, 2011 with no criminal finding whatsoever.

70. The IPOs conspired to maliciously prosecute Gakuba, and denied him equal protection under the laws. Despite having received a false police report of battery, the IPOs

chose to investigate Gakuba for false internet crimes by falsifying facts, or, omitting facts which were material.

71.     The false police reporters were two Caucasians. All the IPOs are Caucasians. Gakuba is African-American.

72.     On or about June 2011, Gakuba telephoned the Itasca Police Department and spoke to a Sgt. Michael Michela.  Gakuba sought to file a complaint against the IPOs for violating his civil rights.

73.     Defendant Michela not only refused to take seriously Gakuba's complaint of police misconduct, but ridiculed and scorned him; referencing a malicious prosecution case involving Gakuba in 2006 which too involved police misconduct and civil rights violations.

74.     Defendant Michela had identified himself as the supervising sergeant of defendants Kauther, Walker, and Mace.  Michela supervised the March 06, 2011 investigation of Gakuba.  Michela, along with his subordinate officers, conspired to deny Gakuba his civil rights.

75.     On October 11, 2011, Gakuba filed a Freedom of Information Act form requesting any and all police reports or documents pertaining to investigations of him by the Itasca Police Department.

76.     On October 11, 2011 Gakuba telephoned the deputy chief-of-police, Robert O'Connor.  Gakuba was not able to speak to O'Connor, and left a voice mail message, again, reasserting his intent on filing a formal complaint of police misconduct by O'Connor's subordinate officers (Michela, Kauther, Walker, and Mace).  O'Connor did not respond to Gakuba's voice mail message and has taken no action to date; thereby, violating Gakuba's right to due process and equal protection under the laws (5th and 14th Amendments, U.S. Constitution).

**B.    The FIRST Malicious Abuse of Process Series of Violations: Conspiracy to Seize and Arrest Plaintiff Without a Warrant and/or Judicial Intervention.**

77.    On March 5, 2011 Defendant IPOs Kauther, Walker, Mace, Michela and O'Connor conceived a fraudulently devised scheme to falsely arrest, seize and maliciously prosecute Gakuba through the circumvention of the warrant requirement.

78.    Defendants Kauther, Walker, Mace, Michela, O'Connor and the Hotel Defendants, had the front door lock on Plaintiff Gakuba's private hotel room residence changed, resulting in their illegal seizure of Plaintiff Gakuba's property.

79.    Then, they ordered the front-desk clerk to notify them immediately upon Gakuba's return to his private residence, whereupon they could seize him in the hotel lobby without necessitating or fulfilling the warrant requirement as he would be arrested in a public place by them; thereby, obviating the need for these IPOs to present their "probable cause" before a magistrate judge  -- for they had no probable cause at all.

80.    Shortly thereafter, Kauther, Walker, Mace, Michela and O'Connor then conspired to post Walker as a sentry to lookout for Gakuba and arrest him should he return to his lawfully retained private residence.  Gakuba did not return that night and Walker was called away to another matter after being parked at Gakuba's residence for several hours.

81.    On March 25, 2011 Kauther reportedly "spoke" to a Deputy Chief Mike Sullivan ("Sullivan") from the Attorney General's Office for the State of Illinois regarding their March 2011 investigation of Plaintiff Gakuba.

82.    On March 25, 2011 Sullivan, based upon what Kauther "spoke" to him about, prepared several grand jury subpoenas to investigate Gakuba for internet felony crimes.

83.     On or about March 25, 2011 Kauther, by and through an Illinois State Police investigator (Sam Thomas), provided false information and falsified facts  that Gakuba had moved to California, as Gakuba is presently under the direction of pretrial services in an unrelated state criminal matter in Rockford, Illinois.  The purpose and design of this Frank's violation was to have Gakuba's pretrial bond revoked and Gakuba remanded into custody.  The state trial court which later heard the matter, deemed it inconsequential and took no action.

### 1.     The Grand Jury Investigation of Plaintiff

84.     On April 1, 2011 Kauther, Walker, Mace, Michela and O'Connor conspired and succeeded in opening a new criminal investigation case into Plaintiff Gakuba for alleged internet crimes.  Kauther faxed grand jury subpoenas to Plaintiff's internet service providers, mobile phone carriers and "air card," seeking connection log data in the false pursuit of alleged internet crimes.

85.     On April 18, 2011 Kauther, Walker, Mace, Michela and O'Connor conspired to issue, and in fact, did issue more grand jury subpoenas with Kauther seeking Plaintiff Gakuba's internet log data and activity from a new series of internet service providers and mobile phone carriers.

86.     On June 24, 2011, according to police reports later obtained by Plaintiff under a Freedom of Information Act ("FOIA") request, the grand jury subpoenas having been served, were returned with no inculpating evidence against Plaintiff.  *This was malicious abuse of process.*(emphasis added)

87.     On October 11, 2011 Gakuba contacted the Itasca Police Dept. seeking information upon him, pursuant to several FOIA requests he had filed, both with the Village of Itasca and with the Itasca Police Dept.

88.     On October 11, 2011 Kauther, Walker, Mace, Michela and O'Connor conspired to then seek to have Gakuba's pretrial bond revoked and Gakuba remanded in an unrelated legal proceeding far outside their jurisdiction and purview.  These IPOs knowingly and purposely provided false, unsubstantiated and uncorroborated information to Gakuba's pretrial probation officer as to Gakuba's current address, and the dates in which he had taken up occupancy at his current address or place of abode.  *This was malicious abuse of process.*

89.     On or about October through November 2011, a state trial court judge held a hearing on the matter.  The court ruled the government's motion, at the encouragement and promulgation of these Defendant police officers, to be "crap" and denied the disturbance of Gakuba's pretrial bond conditions.

**C.      The Second Malicious Abuse of Process Occurrence: Conspiracy to Evade Service of this Federal Complaint and Summons**

90.     On Saturday, January 14, 2012 Defendant Itasca Police Officers ("IPOs") Kauther, Mace, Walker, Michela and O'Connor, and the Village of Itasca, appointed IPOs Payne, Paup and Ragusin to accept service upon their behalf as their authorized agent.[1] A private person, over the age of 18 (and not a party to this lawsuit) rendered service;[2] with Plaintiff Gakuba accompanying the private person as a witness.

91.     On Saturday, January 14, 2012 a copy of the Summons and Complaint in this matter (Gakuba v. Kauther, et.al., Case No. 11-CV-9090) was hand-delivered to Payne, after she falsely stated that Paup was out on a traffic call (with Ragusin), and stated that now she had been

---

[1] Federal Rules of Civil Procedure, Rule 4(e)(2)(C) states that " … delivering of a copy of each [defendant(s)' summons and complaint] to an agent authorized by appointment [by the defendant(s)] … receive service of process [renders service complete]."
[2] *See* Proof of Service.  Christopher Juth ("Juth") is the named affiant and witness in these proceedings as such.

appointed as the sole authorized agent to accept service on behalf of Defendant IPOs Kauther, Mace, Walker, Michela, O'Connor, and the Village of Itasca.

92.     Shortly before Payne accepted service as the authorized agent on behalf of the named Defendants, she stated that Sgt. Paup had been the authorized agent appointed to accept service by the named Defendants in this case, as she had told Juth and Gakuba she had called and spoken to them by radio or telephone, as they were out on street patrol.  However, Sgt. Paup, while waiting for the Summons to be completed, as both he and Payne had at first refused to state if Sgt. Paup was one of the named Defendants in this case or not, devised a subsequent criminal scheme to stalk, harass, intimidate and retaliate against witnesses (Gakuba and the private process server) and so exited from sight as a consequence – whereupon Payne stated she was now the authorized agent by appointment to accept the Summons and Complaint in this case.

93.     On Saturday, January 14, 2012 Gakuba departed the Itasca Police Department after delivery of the Summons and Complaint in this case was successfully served upon Defendant IPOs and the Itasca Police Dept.  Gakuba was accompanied by Christopher Juth ("Juth") who is the affiant in the Proof of Service return and a named witness in these proceedings.

94.     On Saturday, January 14, 2012 as Gakuba and Juth were lawfully and peaceably driving away from the Itasca Police Dept., upon successfully delivering and serving copies of the Summons and Complaint in this case, in Gakuba's vehicle with Juth driving, Paup in conspiracy with Ragusin, proceeded to stalk Gakuba by tailgating Gakuba's vehicle as it was being driven by Juth westbound on Irving Park Road in Itasca, Illinois.

### 1. First Stalking, Witness Intimidation, Obstruction of Justice and Official

### Misconduct Occurrence

95.     Gakuba and Juth, intimidated and fearful by this stalking and threatening police misconduct, took evasive measures.  First, Juth (the driver of Gakuba's vehicle) lawfully and peaceably switched lanes; Paup and Ragusin immediately followed and resumed their tailgating, stalking and intimidation tactics.  Then, Gakuba and Juth lawfully and peaceably exited the roadway and parked at a BP Amoco gas station at the intersection of Irving Park Road and Rohlwing Road in Itasca, Illinois and witnessed Paup on Irving Park Road stopped at a red light parallel to them –  glaring and staring at them in a menacing manner.

96.     Gakuba then used his camera phone to photograph as evidence the stalking and intimidation misconduct of Paup, whom had been stopped on the roadway by a red light.  Upon seeing the camera flash of Gakuba's camera phone, and Paup's light now turning green, Paup then immediately spun his unmarked police cruiser around and into the gas station and falsified a traffic violation citation alleging that Juth had ran a stop sign upon departure from the Itasca Police Department. Ragusin proceeded to discreetly park behind Gakuba's vehicle and the gas station signage to purposely act as Paup's 'back-up.'

97.     Paup had thought that it being Gakuba's vehicle he was stalking, that it would be Gakuba whom he would then maliciously prosecute through the falsification of a traffic violation citation.

98.     On Saturday, January 14, 2012 after Paup completed his illegal conduct of falsifying a traffic violation citation in order to retaliate against a witness in a federal legal proceeding, who is the affiant on the Proof of Service in this case, Paup lingered at the rear of Gakuba's vehicle. Paup was lingering at the rear of Gakuba's vehicle in order to attach a GPS tracking device to it.

### 2.     Second Stalking, Witness Intimidation, Obstruction of Justice and
### Official Misconduct Occurrence and GPS Device on Plaintiff's Car

99.     On Sunday, January 15, 2012 Gakuba observed Paup at his residence, the very next day after Paup had falsified a traffic violation citation against a witness (affiant) in a federal legal proceeding; purely to retaliate, harass, and intimidate that witness (the private process server, Juth). Paup had placed a GPS tracking device onto Plaintiff's car when he issued the false traffic violation citation as Plaintiff observed Paup lingering behind his vehicle before returning to the driver's side window to hand the citation and return Juth's license and Plaintiff's car registration back to them.

100.     On that Sunday, Paup was on duty, as an officer for the Village of Itasca, but now in Elk Grove Village, Illinois where he had NO LAW ENFORCEMENT JURISDICTION or purposeful business to be outside his jurisdiction and at Gakuba's place of residence and abode.

101.     Gakuba drove away from his residence, only for Paup to immediately tailgate him in a stalking and threatening manner.  Gakuba, intimidated and fearful, proceeded to lawfully and peaceably exit the roadway and parked at a Marathon gas station located at the corner of a shopping center at the intersection of W. Devon Ave. and N. Rohlwing Rd in Elk Grove Village, Illinois.  Paup followed and circled around Gakuba's vehicle slowly and brazenly.

102.     Paup, after menacingly and threateningly circling around Gakuba's peacefully and lawfully parked vehicle at this gas station, drove through an adjacent shopping center and parked behind the gas station so he could follow Gakuba once more should he have exited the gas station from W. Devon Ave.

103.     Gakuba immediately called 911 after being stalked, harassed, intimidated and threatened by Paup, who was in uniform and on duty.  Paup sought to tamper with Gakuba, who

now is a witness in a state court legal proceeding involving the prior day's false traffic violation citation issued by Paup on Juth, the private person who rendered service of the Summons and Complaint in this case.

104.     Gakuba called 911 to report the fact that Paup purposely stalked him in order to threaten, intimidate and harass him as a witness to Paup's illegal conduct to maliciously prosecute Gakuba's private person server who rendered service upon the Defendant Itasca Police Officers named in this Complaint and the Itasca Police Department.

105.     Paup's illegal and criminal conduct to obstruct justice succeeded in its design and purpose.  Now, Gakuba and Juth having been stalked, intimidated and harassed, were fearful to return to the Village of Itasca Clerk's Office on Monday, January 16, 2012 that was immediately next door to the Itasca Police Dept. headquarters.[3]

106.     These Defendant IPOs, the Itasca Police Dept., and Village of Itasca, with Paup as their tool, through the fraudulent and malicious manipulation of the summons process itself, through intentional criminal conduct perpetrated by Paup, abused the service of process itself – in the form of summons.[4] *This was malicious abuse of process.*

107.     On January 23, 2012 the U.S. Supreme Court handed down their ruling that required law enforcement to obtain a court order or warrant, before placing a GPS tracking device on a suspect's vehicle.

108.     On January 26, 2012 Juth observed Paup, once again on duty and in police uniform, at Gakuba's private residence and place of abode, in a jurisdiction for which Paup had

---

[3] 540 W. Irving Park Rd. is the address of the Itasca Police Dept.  550 W. Irving Park Rd. is the Village of Itasca address.  Both share a common building structure, parking lot and driveway, with separate entrances to access each.

[4] *Neurosurgery & Spine Surgery, S.C. v. Goldman* 339 Ill. App. 3d 177, 183 and 184 (Ill. App. Ct. 2003)

no legal authority to be in. Paup was there to retrieve a GPS tracking device placed on Gakuba's vehicle during the illegal traffic stop he initiated on January 14, 2012.

109.    On February 6th, 9th and the 14th of 2012, the Village of Itasca's defense counsel have advanced an evasion of service theory through written correspondence to Plaintiff Gakuba.

110.    In the defense counsels' nonsensical written correspondence, they ignore the obvious malicious abuse of process police misconduct and, more to the point, the litany of criminal conduct perpetrated by Paup, at the behest and in conspiracy with the named individual officers in this Complaint to evade service upon the Village of Itasca which have been specified with great particularity in these Factual Statements.

> **D.    The federal and state Fair Housing Act Violations, federal and state Consumer Fraud Violations, federal and state Public Accommodations Violations and Breach-of-Contract**

111.    On December 01, 2011, Plaintiff Gakuba reserved a 90-day occupancy stay at the Extended Stay property located at 1200 American Lane in Schaumburg, Illinois.

112.    Defendant Jessica Naymola ("Naymola"), hotel manager, had exchanged numerous emails with Gakuba that day to book, confirm, and pay for Gakuba's 90-day stay by credit card.

113.    On December 06, 2011, Defendant Naymola called Gakuba to cancel the reservation that Gakuba had previously booked. Naymola stated that the ESA legal department voided Gakuba's reservation because of "problems" he had at another ESA property.

114.    The ESA email correspondence from Naymola to Gakuba state, in part, that the ESA has a "Guaranteed Reservation Policy." Naymola and the ESA breached that guarantee, committed fraud and defamation upon Gakuba.

1.     **Scabies Incident**

115.    On or about January 2010, Defendants Sandifer and HVP and ESA P Portfolios caused or were negligent in Plaintiff Gakuba being exposed to filthy hotel linens, bed sheets and towels that were the direct cause of Plaintiff Gakuba contracting scabies.

116.    Mr. Gakuba was sickened for one to two weeks because of the scabies he had contracted from filthy linens, bed sheets and towels, that Defendants Sandifer and ESA provide guest occupants at their hotel.

E.     **Plaintiff's Damages**

117.    Mr. Gakuba seeks damages for the injuries inflicted upon him as a result of the systematic deprivation of his constitutional rights – 4th, 5th, and 14th Amendments, U.S. Constitution.

118.    These injuries include the physically, emotionally, and psychologically dehumanizing distress associated with being terrorized, persecuted and the subject of stalking and intimidation tactics as both a suspect and a witness in a state legal proceedings, initiated without any lawful or meritorious purpose by the Defendants named in this Complaint.

119.    Plaintiff was subjected to attempts to have him incarcerated for misconduct which he simply did not commit, causing him acute anxiety, depression, insomnia, nervousness, and hopelessness.

120.    Plaintiff is now unable to sustain any reasonable contact with family members, friends and associates because of the paralysis of being unable to be free from Police Defendants' perpetual efforts to intimidate and stalk him and have him falsely arrested and/or falsely imprisoned.

121.     As a result of the Police Defendants' incessant and illegal efforts to maliciously abuse process and maliciously prosecute him, Plaintiff suffers from recurring nightmares.  In these nightmares, he is trapped in an enclosed space where he cannot move.  He often has nightmares of being stalked and persecuted.

122.     Plaintiff suffers from constant fear and anxiety, nervousness, despair, and loneliness.

123.     Plaintiff suffers the distrust of the police and all law enforcement.

124.     The democratic system of justice under the law has been substantially undermined by the unlawful acts of and omissions by the Police Defendants, as described in the preceding paragraphs.

125.     Mr. Gakuba seeks damages inflicted upon him as a result of the systematic and intentional invasion of his privacy, discrimination against his ethnicity and race, actual and constructive eviction, tortuous interference, battery from a scabies attack, defamation and breach-of-contract resulting in personal injury and the intentional infliction of emotional distress by all the named Defendants in this Complaint and by these Conspirators.

**COUNT I**

**(RICO Claim under 18 U.S.C. § 1961, et seq.)**

126.     Each of the preceding paragraphs is incorporated as if restated fully herein.

127.     Defendant Officers  Kauther, Walker, Mace, Michela and O'Connor engaged in and devised a fraudulent scheme to deny Plaintiff Gakuba his right to privacy; his right to be free from illegal entry of his private residence; his right to be free from the illegal seizure of his private residence; his right to due process by crafting a means to circumvent the judicial process requiring a search or arrest warrant as they had no "probable cause" otherwise, and waited in

ambush to falsely arrest, falsely imprison and/or seize Plaintiff in public on or about August 2010 and March 2011. This was a blatant malicious abuse of process. They did not have Plaintiff's consent nor did they have any exigency. Instead, these Caucasian Defendant Officers persecuted Plaintiff, an African-American, and denied him due process and equal protection of the laws as a consequence.

128.     Defendant Officers  Kauther, Walker, Mace, Michela, O'Connor, Paup, Ragusin and Payne engaged in and devised a fraudulent scheme to deny Plaintiff Gakuba his right to privacy; his right to privacy and due process by illegally placing a GPS tracking device on his vehicle without court order or warrant or any other justification or lawful purpose; his right to due process and equal protection to be free from attempts to maliciously prosecute him through audacious acts of malicious manipulation and abuse of process; his right to due process and equal protection in denying him his right to be free from harm or threat of harm from Defendant IPOs' illegal stalking, intimidation and harassment of him; and his right to due process by denying him reliable and sound witnesses in legal proceedings against these Defendants through their illegal stalking, intimidation, and harassment of a witness in these legal proceedings. Instead, these Caucasian Defendant Officers persecuted Plaintiff, an African-American, and denied him due process equal protection of the laws as a consequence.

129.     Defendant Officers furthered this scheme to engage in misconduct, through the following pattern of racketeering activity:

      a.     Retaliating against a witness, victim, or an informant, in violation of 18 U.S.C. §1513, as detailed above;

      b.     Perjury, in falsifying a traffic violation citation intended for Gakuba whose vehicle was stalked and whom these Defendants mistakenly believed to be the driver, in violation of 18 U.S.C. § 1621 as detailed above;

c.      As police officers acting under "color of authority" conspired to willfully intimidate or interfere with Gakuba, or attempted to do so by force or threat of force on the basis of his race or color, in violation of 18 U.S.C. § 241 as detailed above;

d.      As police officers acting under "color of authority" willfully intimidated or interfered with Gakuba or attempted to do so by force or threat of force on the basis of his race or color, in violation of 18 U.S.C. § 242 as detailed above;

e.      Intimidation, by stalking Gakuba and conspiring to maliciously prosecute and engage in malicious abuse of process of him through their intent to discourage Gakuba from prosecuting this case and serving as an eyewitness in *People v. Juth* (Case No. 2012TR005991) in violation of 720 ILCS 5/12-6(a) as detailed above;

f.      Intimidation, by taking action as a public official against Gakuba and affiant Juth by committing state and federal felonies commonly known as 'witness tampering' statutes in violation of 720 ILCS 5/12-6(a) as detailed above;

g.      Stalking, by harassingly and threateningly following Gakuba's vehicle on January 14, 2012 upon delivery of the Summons and Complaint in this case, and January 15, 2012 followed Gakuba from his residence, thereafter to cause Gakuba to fear for his safety and the safety of the private process server whom both suffered and continue to suffer acute emotional distress in violation of 720 ILCS 5/12-7.3 as detailed above;

h.      Witness harassment, by illegally stalking, attempting to maliciously prosecute Gakuba, and maliciously prosecuting a witness (Juth), before a legal proceeding in violation of 720 ILCS 5/32-4a as detailed above;

i.      Witness harassment, by illegally stalking, harassing and intimidating Gakuba and Juth, succeeded in the malicious abuse of process of the service upon the named Defendant Village of Itasca of delivery of their copy on Monday, January 16, 2012 of their Summons and Complaint in this case in violation of 720 ILCS 5/32-4a as detailed above;

j.      Obstruction of Justice, in preventing the prosecution by Gakuba of this case upon the named Defendants through the deliberate furnishing of false information and falsification of evidence to attempt to maliciously

prosecute Gakuba, and to maliciously prosecute Juth in violation of 720 ILCS 5/31-4 as detailed above;

k.      Obstruction of Justice, in preventing the service of a Summons and Complaint in this case upon the Village of Itasca by Juth with Gakuba as a witness of this case engaged in the malicious abuse of process of evading service upon the Village of Itasca in violation of 720 ILCS 5/31-4 as detailed above;

l.      Official Misconduct, as police officers sought to obtain a personal advantage for themselves and their agency and village by attempting to maliciously prosecute Gakuba, maliciously prosecute Gakuba's private process server, to discourage, prevent and deter Gakuba from prosecuting this federal civil rights case and serve as a witness in the state case of *People v. Juth* in violation of 720 ILCS 5/33-3 as detailed above;

m.      Making and filing false police reports, including sworn affidavits, in violation of 720 ILCS 5/26-1, as detailed above;

n.      Upon information and belief, for the purpose of executing and attempting to execute the fraudulent scheme to engage in wrongful conduct, the Defendant Officers repeatedly caused to be made and made telephone calls and other uses of interstate wire facilities to and from this federal District and elsewhere, in violation of 18 U.S.C. § 1343 (wire fraud);

o.      Upon information and belief, for the purpose of executing and attempting to execute the fraudulent scheme to engage in wrongful conduct, the Defendant Officers repeatedly caused reports, grand jury subpoenas and other matters and things to be delivered by the United States Postal Service to and from this federal District and elsewhere, in violation of 18 U.S.C. § 1341 (mail fraud).

p.      Obstruction of criminal investigations, in violation of 18 U.S.C. § 1510;

q.      Tampering with witnesses, in violation of 18 U.S.C. § 1512;

r.      Testifying falsely and committing perjury before the Courts of the State of Illinois in violation of 720 ILCS 5/32-2.

130. Each of the aforesaid violations by the Defendant Officers constitutes an instance of "racketeering activity" as defined in 18 U.S.C. § 1961(1).

131. As detailed above, these multiple acts of racketeering activity by the Police Defendants and others was interrelated, part of a common and continuous pattern of fraudulent schemes furthering their wrongful conduct, and were perpetrated for the same or similar purpose, thus constituting a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

132. The Police Defendants committed at least two acts of racketeering activity, and at least one of these acts occurred after the effective date of 18 U.S.C. § 1961, et seq. The last of these acts occurred within ten years after the commission of a prior act of racketeering activity pursuant to 18 U.S.C. § 1961(5).

133. As a direct and proximate result of the Police Defendants' fraudulent scheme to excuse their wrongful conduct by engaging in a pattern of racketeering activity, Mr. Gakuba suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, emotional distress, and other consequential damages.

134. Mr. Gakuba has and continues to be injured by the Defendant Officers' conduct, actions and omissions.

135. Such injuries will continue until remedies are redressed by this Court.

WHEREFORE, Plaintiff Gakuba demands the following relief jointly and severally against all the Defendants:

   a. Compensatory damages for Plaintiff in an amount that exceeds $75,000;

   b. Punitive damages for Plaintiff against the Defendant Officers in an amount to be determined at trial;

   c. Costs and attorneys' fees, pursuant to 42 U.S.C. § 1988, involved in maintaining this action; and

d.  Such other and further relief as this court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

## COUNT II

**(42 U.S.C. § 1983 Claim for Race-Based Equal Protection Violations)**

136.     Each of the preceding paragraphs is incorporated as if restated fully herein.

137.     Police Defendants Kauther, Walker, Mace, Michela and O'Connor engaged in intentional and unlawful racial discrimination when they illegally entered Mr. Gakuba's private residence on August 12, 2010; unlawfully seized Mr. Gakuba's private residence on March 06, 2011; conspired thereafter to falsely arrest, falsely imprison and maliciously prosecute Mr. Gakuba for internet crimes that a grand jury investigation found was without merit; thus were acts of malicious abuse of process; conversely, defendants manufactured a false police report which falsified material facts, and omitted material facts; failed to arrest or prosecute the false police reporters when it became evident the allegation of "battery" was ridiculous, thereby causing the Plaintiff to be deprived of his right to equal protection of the laws under the 14th Amendment.

138.     Defendant Officers Kauther, Walker, Mace, Michela and O'Connor were acting under color of State Law when they consistently and repeatedly ignored the crime of filing a false police report by two (2) Caucasian reporters, as all the Defendant Officers are Caucasian. Instead, they have discriminately -- and without an evidentiary basis or legal foundation -- investigated Plaintiff without "reasonable suspicion" or "probable cause" for race-based reasons from March 2011 unto October 2011, and likely to the present.  As such, they continue to participate in an unrelated malicious prosecution case from 2006 in Rockford, Illinois which is outside their jurisdiction and which they have no relevant purpose to act in participation – other

than for harassment and discriminatory race-based reasons. Their misconduct constitutes malicious abuse of process as they had no lawful purpose or basis for their actions, thereby rendering their misconduct collateral as a result.

139.    The actions of Defendant Officers Kauther, Walker, Mace, Michela and O'Connor individually, jointly, and in conspiracy, motivated by a racial animus in abusing their powers of authority against Mr. Gakuba, violated the Plaintiff's 14th Amendment right to equal protection of the laws.

140.    The misconduct described in this Count was undertaken intentionally and arbitrarily and with willful indifference to Plaintiff's constitutional rights to be free from racial discrimination in the enforcement of the laws.

141.    Mr. Gakuba has been treated differently than other arrestees, witnesses, and suspects on account of his race and/or color.

142.    There is no compelling interest warranting such disparate treatment nor is such treatment narrowly tailored to serve any compelling interest.

143.    As a direct, foreseeable, and proximate result of the wrongful acts by the Defendant Officers described in this Count, Mr. Gakuba suffered and will continue to suffer humiliation, anxiety, shame, despair, embarrassment, depression, mental pain, anguish, injury to his reputation, and economic losses, all to Plaintiff's damages in an amount to be proven at time of trial.

144.    Because the conspiracy or conspiracies and the overt action in furtherance thereof were done and continued to be done with the knowledge and purpose of depriving Plaintiff, who is African American, equal protection of the laws and/or of equal privilege and immunities under the law, and with racial animus toward Plaintiff of this racially-motivated conspiracy, the

Defendant Officers also deprived Plaintiff of his right to equal protection of the laws under the 14th Amendment and 42 U.S.C. § 1985 through their malicious abuse of process.

WHEREFORE, Plaintiff demands judgment against Defendant Officers Kauther, Walker, Mace, Michela, O'Connor, Paup, Ragusin, and Payne for compensatory damages, and, because these Defendants acted with purpose and/or intent to discriminate for Plaintiff's constitutional rights, for punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just.

## COUNT III

### (42 U.S.C. § 1985 Claim for Conspiracy to Deprive Constitutional Rights)

145.     Each of the preceding paragraphs is incorporated as if restated fully herein.

146.     Defendant Officers Kauther, Walker, Mace, Michela, O'Connor, Paup, Ragusin, and Payne acting in their individual capacities and under color of law, conspired together and with Defendants Sandifer, HVP and ESA, and reached a mutual understanding to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves, to deprive Mr. Gakuba of his constitutional rights, including his rights to be free from unreasonable search and seizure, and to due process of law. Defendants' conspiracies deprived Mr. Gakuba of rights protected by the 4th and 14th Amendments of the United States Constitution, as protected by 42 U.S.C. § 1983.

147.     Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin, and Payne conspired with Defendants Sandifer, HVP and ESA,. to commit the overt acts set forth in the Factual Statements above. The overt acts included the illegal entry, illegal seizure, actual and constructive eviction, conspiracy to falsely arrest, falsely imprison and conspiracy to attempt to maliciously prosecute the Plaintiff. All of the aforesaid police

misconduct was in perpetuation of their malicious abuse of process. It also included the manufacture of knowingly false and knowingly unreliable evidence which was intended to inculpate Plaintiff; the suppression of exculpatory evidence; and intentional failure to investigate evidence which would have exculpated Plaintiff.

148.     The conspiracy by Defendant Officers Kauther, Walker, Mace, Michela, and O'Connor, Paup, Ragusin, and Payne and Defendants Sandifer, HVP and ESA, resulted in the violation of Plaintiff's constitutionally protected rights.

149.     Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin, and Payne conspiracy and overt acts with Defendants Sandifer, HVP and ESA, were continuing in nature and caused Plaintiff constitutional deprivations, injuries, pain, suffering, mental anguish, humiliation, and restricted freedom, lost companionship, and lost income.

150.     Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin, and Payne and Defendants Sandifer, HVP and ESA, shared the general conspiratorial objective, which was to cause Plaintiff's false arrest, false imprisonment, and malicious prosecution, all acts of malicious abuse of process, as previously described.

151.     Additionally or alternatively, Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin, and Payne and Defendants Sandifer, HVP and ESA, knowing that the above § 1985 conspiracy to falsely arrest, falsely imprison and illegally seize Plaintiff was about to be committed, in furtherance of their illegal malicious abuse of process, and having the power to prevent or aid in preventing the commission of these acts in furtherance of said conspiracy, neglected and/or refused to do so, in violation of 42 U.S.C. § 1986.

152.     The acts Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin, and Payne as described were motivated by a racial animus, an evil motive and

intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendant Officers Kauther, Walker, Mace, Michela and O'Connor and Defendant Sandifer.

153.    If Plaintiff prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests judgment against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin, and Payne and Defendants Sandifer,  HVP and ESA, jointly and severally, for compensatory damages in an amount that is fair and reasonable, including for lost wages, and for punitive damages, plus costs of this action, attorneys' fees, and whatever additional relief this court finds equitable and just.

## COUNT IV

### (42 U.S.C. § 1986 Claim for Negligence in Preventing a Conspiracy to Deprive Constitutional Rights)

154.    Each of the preceding paragraphs is incorporated as if restated fully herein.

155.    Because in their actual participation in the conspiracy to falsely arrest, falsely imprison, and illegally seize, and attempt to maliciously prosecute Plaintiff, to further their maliciously abuse of process, Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, and Defendants Sandifer, HVP and ESA, had actual knowledge of a conspiracy under 42 U.S.C. § 1985 to deprive Mr. Gakuba of his constitutional rights.

156.    As Deputy Police Chief, Defendant O'Connor supervised Sgt. Michela and his subordinates, and was in receipt of repeated allegations of police misconduct towards Plaintiff Gakuba. Defendant O'Connor therefore had sufficient knowledge of a conspiracy under 42 U.S.C. § 1985 to deprive Mr. Gakuba of his constitutional rights.

157.    Defendants, as contained in the preceding paragraphs, had actual knowledge of a conspiracy under 42 U.S.C. § 1985 to deprive Plaintiff Gakuba of his constitutional rights.

158.    Defendants had the power to prevent or aid in preventing the commission of a conspiracy under 42 U.S.C. § 1985 to deprive Plaintiff of his constitutional rights as described in above.

159.    Defendants neglected or refused to prevent a conspiracy under 42 U.S.C. § 1985 to deprive Plaintiff of his constitutional rights.

160.    As a direct and proximate cause of the Defendants' failure to prevent a conspiracy under 42 U.S.C. § 1985 to deprive Plaintiff of his constitutional rights, the Plaintiff suffered injuries and damages, including but not limited to severe emotional distress.

 WHEREFORE, Plaintiff requests judgment against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer, HVP and ESA, jointly and severally, for compensatory damages in an amount that is fair and reasonable, including for lost wages, and for punitive damages, plus costs of this action, attorneys' fees, and whatever additional relief this court finds equitable and just.

## COUNT V

### (42 U.S.C. § 1983 Claim for Failure to Intervene)

161.    Each of the preceding paragraphs is incorporated as if restated fully herein.

162.    During Plaintiff's repeated victimization of illegal entries into his private residence, false allegations precipitating a Grand Jury investigation, and efforts to stalk and intimidate Plaintiff and to intimidate his witness, the Police Defendants and possibly others, stood by without intervening to prevent their co-workers and colleagues from subjecting Plaintiff to such flagrant acts of police misconduct.

163.     As a result of the Police Defendants' failure to intervene to prevent the unlawful entry into Plaintiff's private residence, failure to halt the attempt to falsely arrest and seize Plaintiff, failure to provide truthful facts when false ones were alleged to precipitate a Grand Jury investigation, and continued stalking, harassment and intimidation of Plaintiff who is a witness in a state traffic case where some or all of these Police Defendants participated, have caused Plaintiff to suffer pain and injury, as well as emotional distress.   All the named Police Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

164.     The police misconduct described in this Count and in the Factual Statements was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

165.     The police misconduct described in this Count and Factual Statements was undertaken pursuant to the policies and practices of the Itasca Police department in the manner previously described.

WHEREFORE, Plaintiff demands judgment against Defendants Kauther, Mace, Walker, Michela, O'Connor, Paup, Ragusin, and Payne for compensatory damages, and, because these Police Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights, for punitive damages, pus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just.

## COUNT VI

### (42 U.S.C. § 1983 Claim for Deprivation of Due Process)

166.     Each of the preceding paragraphs is incorporated as if restated fully herein.

167.     As described more fully above, Police Defendants Kauther, Mace, Michela, Walker, O'Connor, Paup, Ragusin and Payne acting under color of law and within the scope of

their employment as police officers, deprived Plaintiff of his constitutional rights to be free from unlawful searches and seizures (both in private residence illegal entries, and, in subpoenaing Plaintiff's telephone and internet use records without truthful probable cause), free from witness tampering and intimidation, by circumventing the warrant requirement and by issuing a false traffic violation citation to discourage a material witness from reliably testifying and participating in this federal lawsuit.

168.    The Police Defendants deliberately provided false evidence, thereby misleading and misdirecting the Courts when convening a Grand Jury, and, where Court intervention was inconvenient, engaged in a pattern of conduct that was lawless.

169.    To Wit, the Police Defendants fabricated false allegations that were the bases of a false traffic violation citation, withheld exculpatory evidence throughout the pending state traffic court proceedings, and fabricated evidence that was the basis of the state traffic court prosecution of Christopher Juth, a material witness and private process server in this federal lawsuit.

170.    Specifically, during the Juth's state traffic court case Police Defendants concealed the fact that the traffic violation had never ever occurred, at the location and time so specified in the traffic citation they had falsely issued.

171.    This police misconduct by the Police Defendants resulted in a wrongful conviction of Plaintiff's material witness to be presented in this federal lawsuit.  The matter is pending on appeal, presently.

172.    The police misconduct by the Police Defendants denied Plaintiff his constitutional right to reliable participating material witnesses in this federal lawsuit as guaranteed in the Due Process Clause of the 14th Amendment of the U.S. Constitution.

173. As a result of the violation of this constitutional right to reliable testimony of a material witness, Plaintiff suffers injuries, including but not limited to emotional distress.

174. The police misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

175. The misconduct described in this Count was undertaken pursuant to the policies and practices of the Itasca Police Dept. in the manner described in the preceding paragraphs.

## COUNT VII

### (42 U.S.C. § 1986 Monell Policy Claim Against the Village of Itasca)

176. Each of the preceding paragraphs is incorporated as if restated fully herein.

177. The actions of Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin, and Payne, as alleged above, were done pursuant to one or more de facto policies, practices, and/or customs of the Village of Itasca.

178. At all material times the Village of Itasca, through its Police Department, Superintendents, Police Board, Office of Professional Standards, Personnel Division, Mayors, City Council, and/or Corporation Counsel's Office had de facto policies, practices, and customs included, *inter alia*:

      a.    manufacturing, fabricating, and/or using improper suggestive tactics to obtain false witness statements;

      b.    the filing of false reports, and giving false statements and testimony, and fabricating or constructing evidence, suppressing exculpatory evidence, pursuing and obtaining wrongful prosecutions and malicious prosecutions, denying suspects their right to full and fair access to the courts, and otherwise covering up the true nature of their personal objectives and intentions;

c.      failure to video and/or audio tape the false traffic violation citation by purposely using a police vehicle that was unequipped with a dashboard camera, and having the back-up officer fail turn his on;

d.      the failure to properly train, supervise, discipline, transfer, monitor, counsel, and/or otherwise control police officers, particularly those who were repeatedly engaged in illegal entries into private residences, seizing private residences to further a false arrest, malicious prosecution, and/or wrongful conviction; of making false reports and statements. This failure to properly train, supervise, discipline, transfer, monitor, counsel, and/or otherwise control includes Defendants Kauther, Michela, Walker, O'Connor, Mace, Paup, Ragusin and Payne.

e.      the police "code of silence," specifically in cases where officers engaged in the violations articulated in paragraphs a-d above whereby police officers refused to report or otherwise covered-up instances of police misconduct, and/or fabricated, suppressed, and destroyed evidence of which they were aware, despite their obligation under the law and police regulations to so report. The code of silence also includes police officers either remaining silent or giving false and misleading information during official investigations and Grand Jury proceedings in order to protect themselves and/or fellow officers from internal discipline, civil liability, or criminal charges, and perjuring themselves in criminal cases where they and/or their fellow officers have otherwise unconstitutionally searched or seized, falsely arrested, imprisoned, and/or prosecuted a criminal defendant.

f.      the permissive condoning of police officers' illegal entry into lawfully rented and occupied private hotel room residences;

g.      the failure to intervene, halt, or investigate police misconduct or illegal behavior leading to attempted and conspiratorial efforts to falsely arrest, falsely imprison and maliciously prosecute Plaintiff, despite being put on notice that such practices were regularly occurring and were the method by which to engage in malicious abuse of process;

h.      the suppression and cover-up of favorable exculpatory evidence to suspects, arrestees, or defendants who were criminally investigated to skirt or evade impartial judicial intervention, and continuing to attempt to maliciously prosecute cases in reliance on false police reports in perpetuating their malicious abuse of process and prosecution.

179.     The above-described policies, practices, and customs of the Village of Itasca and the Itasca Police Department were so widespread, permanent, and well-settled as to constitute a custom or usage, and were undertaken with malice, willfulness, and reckless indifference to the rights of others. These policies, practices, and customs directly and proximately caused the constitutional deprivations suffered by Plaintiff Gakuba.

180.     Said policies, practices, and customs, both individually and together, were maintained and implemented with deliberate indifference; they encouraged, *inter alia*, the falsification and/or fabrication of evidence, statements, and false witness testimony, the intimidation of witnesses, the making of false police reports, the giving of false testimony, the obstruction of justice, the manipulation and obstruction of the State and federal courts, and the pursuit and continuation of wrongful prosecutions and convictions, malicious prosecutions; and were, separately and together, a direct and proximate cause of the unconstitutional acts and perjury committed by the named Police Defendants and their unnamed co-conspirators, and the injuries suffered by Plaintiff.

181.     Additionally, the Village of Itasca's failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel Police Defendants Kauther, Walker, Mace, Michela, O'Connor, Paup, Ragusin, and Payne was also done with deliberate indifference and likewise served as a direct and proximate cause of the injuries to Plaintiff.

182.     Additionally, and/or alternatively, the involvement in, and ratification of, the unconstitutional actions set forth above, by Itasca governmental and police policy makers, including, but not limited to, successive Police Superintendents, including O'Connor, and several Mayors and City Counsel Chairs or Presidents, establish that said violations were directly and proximately caused by the Village of Itasca and its Police Department.

WHEREFORE, Plaintiff demands judgment against Defendants the Village of Itasca for substantial compensatory damages, plus costs and attorneys' fees and whatever additional relief this court finds equitable and just.

## COUNT VIII

### (42 U.S.C. § 1986 Monell Policy Claim Against Dupage County)

183.    Each of the preceding paragraphs is incorporated as if restated fully herein.

184.    The actions of Police Defendants, as alleged above, were done pursuant to one or more de facto policies, practices, and/or customs of Dupage County.

185.    These de facto polices, practices, and customs included, *inter alia*:

    a.    the routine and regular "blind-eye" turned by individual members of the Dupage County State's Attorney's Office, including its Felony Review Division, who were expressly on notice that the Police Defendants and other officers under Defendant O'Connor's command had engaged in illegal entries into private residences, false traffic violation citations to retaliate, intimidate, and harass witnesses; and the attachment of GPS tracking devices without Court order or warrant;

    b.    the failure to intervene, halt, or investigate reports of illegal searches and/or seizures, false police reports and statements, witness harassment and intimidation by stalking Plaintiff at his private residence well outside the jurisdiction of Itasca and Dupage County, despite being put on notice that such practices were regularly occurring; and

    c.    the suppression and cover-up of favorable exculpatory evidence to defendants who were prosecuted and wrongfully convicted, and continuing to condone the malicious prosecution of these cases on reliance of perjured police testimony and false police reports.

186.    The above-described polices, practices, and customs of Dupage County and the Dupage County State's Attorney's Office were so widespread, permanent, and well-settled as to constitute a custom or usage, and were undertaken with malice, willfulness, and reckless

indifference to the rights of others. These policies, practices and customs directly and proximately caused the constitutional deprivations suffered by Plaintiff.

WHEREFORE, Plaintiff demands judgment against Dupage County for substantial compensatory damages, plus costs and attorneys' fees, and whatever additional relief this court finds equitable and just.

## COUNT VIX

### (State Law Claim for Civil Conspiracy)

187.    Each of the preceding paragraphs is incorporated as if restated fully herein.

188.    As described more fully in the preceding paragraphs, Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin, and Payne acting in concert with Defendants Sandifer, HVP and ESA, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

189.    In furtherance of the conspiracy, named Defendants committed overt acts and were otherwise willful participants in their joint activity.

190.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the Plaintiff.

191.    As a direct and proximate result of the Defendants' conspiracy, Plaintiff suffered damages, including, but not limited to, severe emotional distress and anguish.

WHEREFORE, Plaintiff Gakuba demands judgment against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin, and Payne acting in concert with Defendants Sandifer, HVP and ESA, for compensatory damages, and, because these Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's

constitutional rights, for punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this court deems equitable and just.

## COUNT X

### (State Law Claim for Violations of the Constitution of the State of Illinois)

192.     Each of the preceding paragraphs is incorporated as if restated fully herein.

193.     The Defendants named in this Complaint, Police and Hotel, violated Plaintiff's rights and privileges as guaranteed to him under the Constitution of the State of Illinois "Bill of Rights," Article I (Sections 1, 2, 6, 12, 20, 23, and 24).

WHEREFORE, Plaintiff Gakuba demands judgment against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin, and Payne acting in concert with Defendants Sandifer, HVP and ESA, for compensatory damages, and, because all these Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights, for punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this court deems equitable and just.

## COUNT XI

### (State Law Claim for Violation of Illinois Hate Crime Act, 720 ILCS 5/12-7.1)

194.     Each of the preceding paragraphs is incorporated as if restated herein.

195.     As described more fully in the preceding paragraphs, Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer, HVP and ESA,  committed an illegal entry into Plaintiff Gakuba's private residence on August 12, 2010; attempted to commit another  illegal entry on March 5, 2011; then illegally seized Plaintiff's private residence and succeeded in his actual and constructive eviction, in furtherance of the

Defendants' conspiracy to falsely arrest, falsely imprison and maliciously prosecute Plaintiff because of Plaintiff's race, thereby committing a hate crime as defined by Illinois statute.

196.    Defendant Officers Kauther, Walker, Mace, Michela and O'Connor then failed to prosecute the false police reporters that instigated the Defendant Officers' investigation of Plaintiff Gakuba denying Plaintiff equal protection under the laws because of Plaintiff's race, thereby committing a hate crime as defined by Illinois statute.

197.    Subsequently, Defendant Officers Kauther, Walker, Mace, Michela and O'Connor conspired to attempt to maliciously prosecute Plaintiff Gakuba for internet crimes by falsifying facts and/or omitting material facts to an assistant state attorney general, whereupon a grand jury convened and concluded the Defendant Officers' criminal allegations were meritless and without evidentiary foundation, thus denying Plaintiff due process because of Plaintiff's race, thus committing a hate crime as defined by Illinois statute and in perpetuation of a malicious abuse of process.

198.    As a direct and proximate result of this hate crime, Plaintiff Gakuba suffered damages, including physical injuries and severe emotional distress.

199.    The misconduct alleged herein was within the scope of Defendant Officers Kauther, Walker, Mace, Michela and O'Connor's employment and Defendant Sandifer's employment as hotel employee acting in concert with the other defendants, all being state actors.

200.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Mr. Gakuba.

WHEREFORE, Plaintiff Gakuba demands judgment against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor acting in concert with Defendants Sandifer, HVP and ESA,  for compensatory damages, and, because these Defendants acted maliciously, willfully,

wantonly, and/or with reckless disregard for Plaintiff's constitutional rights, for punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this court deems equitable and just.

## COUNT XII

### (State Law Claim for Intentional Infliction of Emotional Distress)

201.    Each of the preceding paragraphs is incorporated as if restated fully herein.

202.    Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer, HVP and ESA, individually, jointly, and in conspiracy, by, *inter alia*, committing home invasion, the illegal entry and seizure of Plaintiff's private residence on August 12, 2010 and March 5, 2011, the conspiracy to falsely arrest, falsely imprison and maliciously prosecute Plaintiff, and/or by failing to prevent or stop such misconduct; by invading his privacy as a hotel guest occupant; by breaching the contractual agreement he had with Sandifer and HVP and ESA; by actual and constructive eviction, was extreme and outrageous conduct by the named Defendants in this Paragraph and perpetrated in furtherance of their malicious abuse of process.

203.    Additionally, Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer, HVP and ESA, individually, jointly, and in conspiracy, *inter alia*, subsequently manufactured false police reports, failed to prosecute false police reporters, and engaged in a wholesale effort to maliciously prosecute Plaintiff Gakuba for unfounded internet crimes, engaged in extreme and outrageous police misconduct in furtherance of their malicious abuse of process.

204.    Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer, HVP and ESA, intended, by subjecting Plaintiff to such

humiliating and degrading conduct, to inflict severe emotional distress on the Plaintiff, and knew that their conduct would cause Plaintiff to suffer severe emotional distress.

205.    As a direct and proximate cause of these Defendants' outrageous conduct contained in this Count, Plaintiff was and continues to be injured, and has, and continues to experience, severe emotional distress, including but not limited to constant fear and anxiety, nightmares, sleep disruption, depression, and a recurring fear of illegal seizures, attempted false arrests, and conspiracies to maliciously prosecute him by peace officers and/or engage in malicious abuses of process.

WHEREFORE, Plaintiff demands judgment against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer, HVP and ESA, for compensatory damages, plus the costs of this action, and such other relief as this court deems equitable and just.

## COUNT XIII

### (State Law Claim for Malicious Abuse of Process from the Illegal Entry, Home Invasion, and Conspiracy to Commit False Arrest, and False Imprisonment )

206.    Each of the preceding paragraphs  is incorporated as if restated fully herein.

207.    The illegal entry of August 12, 2010 of Mr. Gakuba's private residence, without consent, exigency, or warrant, individually jointly, and in conspiracy by Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer, HVP and ESA, constituted the torts of illegal entry, home invasion, illegal seizure, actual and constructive eviction and conspiracy to commit false arrest and imprisonment under Illinois law.

208.    The purpose and design of these unlawful acts, by these actors/defendants, was in furtherance of a malicious abuse of process.  The courts and legal system, encompassing criminal

justice, were circumvented, massaged, manipulated and misused in a failed effort to frame Gakuba for crimes he had not committed.

209.     Defendants' actions contained in this Count of the Complaint in illegally entering, seizing, actually and constructively evicting, invading Plaintiff's privacy, and conspiring to falsely arrest and falsely imprison Mr. Gakuba were willful and wanton acts.

WHEREFORE, Mr. Gakuba demands compensatory damages against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer, HVP and ESA, and because these Defendants acted in a malicious, willful, and/or wanton manner towards Mr. Gakuba, punitive damages, and such other and additional relief as this court deems equitable and just.

## COUNT XIV

**(State Law Claim for Conspiracy to Commit Malicious Prosecution and Malicious Abuse of Process – Grand Jury Subpoenas and Investigation)**

210.     Each of the preceding paragraphs is incorporated as if restated fully herein.

211.     Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, individually, jointly, and in conspiracy, attempted to maliciously prosecute without probable cause Mr. Gakuba for wholly false and incredible internet crimes, which a grand jury later deemed baseless.  Their conspiracy was perpetuated through the actual malicious abuse of process by them as set forth in the Introduction and Factual Statements of this Complaint.

212.     The Defendants' actions were done in a willful and wanton manner, and directly and proximately caused the injury and damage to Plaintiff set forth above.

213. As a result of the misconduct described in this Count, Plaintiff Gakuba has suffered and continues to suffer injuries including pain and suffering, and severe emotional distress.

WHEREFORE, Plaintiff Gakuba demands actual or compensatory damages against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, and, because these Defendants acted in a malicious, willful, and/or wanton manner towards Mr. Gakuba, punitive damages, and such other and additional relief as this court deems equitable and just.

## COUNT XV

### (State Law Respondeat Superior Claim)

214. Each of the preceding paragraphs is incorporated as if restated fully herein.

215. Defendant Officers Kauther, Walker, Mace, Michela and O'Connor were, at all times material to this complaint, employees of the Defendant Village of Itasca, were acting within the scope of their employment, and their acts which violated state law are directly chargeable to the Defendant Village of Itasca under State law pursuant to respondeat superior.

216. Defendant Sandifer, at the times specified in this complaint, was an employee of Defendants HVP L.L.C. and ESA P Portfolios L.L.C., and was acting at these times within the scope of his employment as a hotel manager employee, and those acts which are actionable under State law are directly chargeable to the Defendants HVP L.L.C. and ESA P Portfolios L.L.C., under State law pursuant to respondeat superior.

WHEREFORE, Plaintiff demands judgment against the Village of Itasca, and Defendants HVP L.L.C. and ESA P Portfolios L.L.C., for any and all compensatory damages awarded on Plaintiff's State law claims against the Defendants named in this Count, plus the costs of the action, and whatever additional relief this court deems equitable and just.

## COUNT XVI

### (State Law Claim–Indemnification)

217.     Each of the preceding paragraphs is incorporated as if restated fully herein.

218.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

219.     Police Defendants Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin and Payne, are employees of the Village of Itasca, who acted within the scope of their employment in committing the misconduct described herein.

220.     Defendant Sandifer was an employee of HVP L.L.C. and ESA P Portfolios L.L.C.**,** who acted within the scope of his employment in committing the misconduct described herein.

WHEREFORE, Plaintiff demands judgment against the Village of Itasca and HVP L.L.C. and ESA P Portfolios L.L.C.**,** for any and all compensatory damages awarded on Plaintiffs' State law claims against the Defendants named in this Count, plus the costs of the action, and whatever additional relief this court deems equitable and just.

## COUNT XVII

### (745 ILCS 10/9-102 and Common Law Claims Against the Village of Itasca, Dupage County, HVP L.L.C. and ESA P Portfolios L.L.C.)

221.     Each of the preceding paragraphs is incorporated as if restated fully herein.

222.     The Defendant Village of Itasca and/or Dupage County were the employers of Defendant Officers Kauther, Walker, Mace, Michela, O'Connor, Paup, Ragusin, and Payne and at all times relevant and material to this complaint.

223.     These Defendants committed the acts alleged above as state actors under color of law and within the scope of their employment as employees of the Village of Itasca .

224.     Additionally, the Defendants HVP L.L.C. and ESA P Portfolios L.L.C.  were the employers of Defendant Sandifer and Naymola at the times specified in this complaint.

225.     Defendant Sandifer and Naymola committed the acts alleged in this Complaint as state actors under color of law and within the scope of their employment as employees of the HVP L.L.C. and ESA P Portfolios L.L.C.

226.     The Defendants Village of Itasca and Dupage County are therefore responsible for any judgment entered against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, Paup, Ragusin, and Payne for acts committed by them during their employment with the Village of Itasca and Dupage County, making Itasca and Dupage County necessary parties to this Complaint.

WHEREFORE, Plaintiff,  pursuant to 745 ILCS § 10/9-102, and otherwise pursuant to law, demands judgment against the Defendants  Village of Itasca, Dupage County, HVP and ESA P Portfolios, in the amounts awarded to Plaintiff against the individual Defendants as damages, attorneys' fees, costs, and interest, and for whatever additional relief this court deems equitable and just.

## COUNT XVIII

### (42 U.S.C. § 3613(c)(1) et seq., Claim for Race-based Fair Housing Act Violations)

227.     Each of the preceding paragraphs is incorporated as if restated fully herein.

228.     Defendant Jessica Naymola, hotel manager and employee of Defendants HVP L.L.C. and ESA P Portfolios L.L.C.  discriminated against Plaintiff Gakuba as a provider of

housing through the rental of long-term occupancy rooms at the hotel property of 1200 American Lane in Schaumburg, Illinois.

229.     Plaintiff Gakuba had lawfully and constructively entered into a binding agreement to rent a room from Defendants Naymola and Extended Stay America, Inc. for a 90-day term. The term was to commence January 1, 2012 and terminate on March 31, 2012.

230.     Without cause, justification, or prior notice the Defendants named in this Count terminated the agreement on December 6, 2011.

231.     The Defendants Naymola and Defendants HVP L.L.C. and ESA P Portfolios L.L.C. have continued to advertise prolifically on Craig's List for available rooms for long-term occupancy, all the while discriminating against Plaintiff Gakuba because he is African-American.

232.     Upon information and belief, Plaintiff knows of no one else, similarly situated, who were not African-American, that have been denied occupancy by the Defendants named in this Count.

WHEREFORE, Plaintiff demands judgment against Defendants Naymola and Defendants HVP L.L.C. and ESA P Portfolios L.L.C. for compensatory damages, and, because these Defendants acted with purpose and or intent to discriminate for Plaintiff's constitutional rights, for punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just.

## COUNT XIX

**(42 U.S.C. § 2000a et seq. & 42 U.S.C. § 1981(a)(b), Claim for Race-based Public Accommodations Violations)**

233.     Each of the preceding paragraphs is incorporated as if restated fully herein.

234.     Defendant Jessica Naymola, hotel manager and employee of Defendants HVP L.L.C. and ESA P Portfolios L.L.C.dd discriminated against Plaintiff Gakuba as a provider of housing through the rental of long-term occupancy rooms at the hotel property of 1200 American Lane in Schaumburg, Illinois.

235.     Plaintiff Gakuba had lawfully and constructively entered into a binding agreement to rent a room from Defendants Naymola and Extended Stay America, Inc. for a 90-day term. The term was to commence January 1, 2012 and terminate on March 31, 2012.

236.     Without cause, justification, or prior notice the Defendants named in this Count terminated the agreement on December 6, 2011.

237.     The Defendants Naymola and Extended Stay America, Inc. have continued to advertise prolifically on Craig's List for available rooms for long-term occupancy, all the while discriminating against Plaintiff Gakuba because he is African-American.

238.     Upon information and belief, Plaintiff knows of no one else, similarly situated, who were not African-American, that have been denied occupancy by the Defendants named in this Count.

WHEREFORE, Plaintiff demands judgment against Defendants Naymola and HVP L.L.C. and ESA P Portfolio L.L.C. for compensatory damages, and, because these Defendants acted with purpose and or intent to discriminate for Plaintiff's constitutional rights, for punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just pursuant to 42 U.S.C. § 1981(a)(b).

## COUNT XX

### (State Law Claim for Consumer Fraud and Deceptive Business Practices Act Violations - Scabies)

239.     Each of the preceding paragraphs is incorporated as if restated fully herein.

240.     Defendants Sandifer, hotel manager, and employee of Defendants HVP L.L.C. and ESA P Portfolio L.L.C, defrauded Plaintiff Gakuba as a provider of housing through the rental of long-term occupancy rooms at the hotel properties of 1181 North Rohlwing Road in Itasca, Illinois, and, of 1200 American Lane in Schaumburg, Illinois.

241.     Plaintiff Gakuba was a hotel guest occupant at 1181 North Rohlwing Road under the property management of Defendant Sandifer and ESA, who during the course of occupancy, provided Plaintiff with unsanitary and filthy linens, bedspreads and comforters and bath towels which contained scabies that then infected Plaintiff.

242.     Plaintiff Gakuba was deceptively led to believe that the hotel room would be free of any vermin, scourge, or other unsafe and unhealthy events which would void or breach the long-term lease agreement between Plaintiff and Defendants.

243.     On or about January 1, 2010 Plaintiff became infected with scabies, or body lice, as a direct and undisputed result of unsanitary, filthy and dirty bed sheets, linens and bath towels given to him by Defendants Sandifer and ESA throughout the duration of his stay at the hotel property in Itasca, Illinois.

244.     Defendants did not deny the occurrence of scabies, and instead offered to move Plaintiff to another hotel room.  Additionally, Defendants dispatched a pest control and/or exterminator upon being emailed and alerted to this scabies infection.  This was impuissant and a farce. Scabies are not bugs, they are lice.  Examining a hotel room's furnishings with the naked eye is in no way how you detect scabies – as did the pest control agent, who was neither an expert in scabies nor understood what scabies even were.

245.     Defendants refused to refund Plaintiff monies he had paid for the hotel room, stating that he prepaid for the hotel room to obtain a preferred long-term lease rate, and checking-out prior to the 30-day lease term would forfeit what Plaintiff had already paid.

246.     Defendants failure and refusal to refund Plaintiff fees paid for the hotel room upon their breach-of-contract and non-performance of the lease agreement, constituted fraudulent and deceptive business practices.

247.     Defendants failure to provide sanitary bed sheets, linens and bath towels in accordance with established industry practices and procedures without disclaiming their room materials might pose a health risk to room occupants constituted fraudulent and deceptive business practices.

WHEREFORE, Plaintiff demands judgment against Defendants Sandifer and HVP L.L.C. and ESA P Portfolio L.L.C. for compensatory damages, and, because these Defendants acted with purpose and or intent to defraud and deceive Plaintiff by refusing to refund monies and payments made in a wanton and reckless manner, for punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just.

## COUNT XXI

### (State Law Claim for Consumer Fraud and Deceptive Business Practices Act Violations – Guaranteed Reservation Policy)

248.     Each of the preceding paragraphs is incorporated as if restated fully herein.

249.     Defendant Jessica Naymola, hotel manager and employee of Defendants HVP L.L.C. and ESA P Portfolio L.L.C. defrauded and deceived Plaintiff Gakuba as a provider of housing through the rental of long-term occupancy rooms at the hotel property of 1200 American Lane in Schaumburg, Illinois.

250.     Plaintiff Gakuba had lawfully and constructively entered into a binding agreement to rent a room from Defendants Naymola and Extended Stay America, Inc. for a 90-day term. The term was to commence January 1, 2012 and terminate on March 31, 2012.

251.     Without cause, justification, or prior notice the Defendants named in Count XVIII terminated the agreement on December 6, 2011.

252.     The Defendants Naymola and HVP L.L.C. and ESA P Portfolio L.L.C.  have a stated "Guaranteed Reservation Policy" when they confirmed Plaintiff's reservation with them at the 1200 American Lane in Schaumburg, Illinois property.

253.     The Defendants violated and breached the "Guaranteed Reservation Policy" by voiding Plaintiff's reservation without just cause, valid reason or genuine belief.  The Defendants perpetrated fraud and deceptive business practices as a result.

WHEREFORE, Plaintiff demands judgment against Defendants Naymola and HVP L.L.C. and ESA P Portfolio L.L.C.  for compensatory damages, and, because these Defendants acted with purpose and or intent to defraud and/or deceive Plaintiff, for punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just.

## COUNT XXII

### (State Law Claim for Tortuous Interference from the Illegal Entry, Home Invasion, and Actual and Constructive Eviction)

254.     Each of the preceding paragraphs is incorporated as if restated fully herein

255.     As specified in the Factual Statements of this Complaint, the illegal entry of August 2010 and March 2011 of Mr. Gakuba's private residence, without consent, exigency, or warrant, individually jointly, and in conspiracy by Defendant Officers Kauther, Walker, Mace,

Michela and O'Connor, acting in concert with Defendant Sandifer, constituted the torts of illegal entry, home invasion, illegal seizure, actual and constructive eviction, and tortuous interference under Illinois law.

256.     Defendants' actions contained in this Count of the Complaint in illegally entering, seizing, actually and constructively evicting, and invading Plaintiff's privacy, resulted in the tortuous interference of the long-term lease agreement between Plaintiff and Defendant Extended Stay America, Inc.

WHEREFORE, Mr. Gakuba demands compensatory damages against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendant Sandifer,  and because these Defendants acted in a malicious, willful, and/or wanton manner towards Mr. Gakuba, punitive damages, and such other and additional relief as this court deems equitable and just.

## COUNT XXIII

### (State Law Claim for Actual and Constructive Eviction)

257.     Each of the preceding paragraphs is incorporated as if restated fully herein.

258.     As specified in the Factual Statements of this Complaint, the illegal entry of August 2010 and March 2011 of Mr. Gakuba's private hotel room residence, without consent, exigency, or warrant, individually, jointly, and in conspiracy by Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer and HVP L.L.C. and ESA P Portfolio L.L.C. constituted the torts of illegal entry, home invasion, illegal seizure, and actual and constructive eviction, under Illinois law; all in furtherance of, but not solely to the exclusion of, acts of malicious abuse of process.

259. Defendants' actions contained in this Count of the Complaint in illegally entering, seizing, actually and constructively evicting, and invading Plaintiff's privacy, resulted in the Plaintiff actually being evicted from his occupied room on March 05, 2011 when Defendant Officers "secured" it pursuant to a conspiracy to attempt to falsely arrest, imprison and maliciously prosecute Plaintiff on the basis of a false police report. This manipulation of the process, in circumventing the warrant requirement among other due process constitutionally protected rights, was malicious abuse of process culminating in the seizure of Gakuba's residence.

260. Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer and HVP L.L.C. and ESA P Portfolio L.L.C. through their participation and cooperation in the conspiracy to falsely arrest, imprison and maliciously prosecute Plaintiff resulted in the Plaintiff vacating the premises temporarily in March 2011 after suffering the intentional infliction of emotional distress, pain and suffering.

WHEREFORE, Mr. Gakuba demands judgment and compensatory damages against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer and HVP L.L.C. and ESA P Portfolio L.L.C., and because these Defendants acted in a malicious, willful, and/or wanton manner towards Mr. Gakuba, punitive damages, and such other and additional relief as this court deems equitable and just.

## COUNT XXIV

### (State Law Claim for Invasion of Privacy)

261. Each of the preceding paragraphs is incorporated as if restated fully herein.

262. As specified in the Factual Statements of this Complaint, the Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer and

HVP L.L.C. and ESA P Portfolio L.L.C. engaged in the malicious abuse of process by way of their illegal entry, home invasion, illegal seizure, and actual and constructive eviction of Plaintiff while a hotel guest and occupant at the Extended Stay America, Inc. in Itasca, Illinois both on August 12, 2010 and March 06, 2011.

263.    The purpose of the illegal entry, home invasion, illegal seizure, and actual and constructive eviction was to further the Defendant's conspiracy to falsely arrest, falsely imprison, and attempt to maliciously prosecute Plaintiff.   These acts comprised a malicious abuse of process.

264.    To achieve and accomplish their conspiracy, these co-conspirators, as specified in the preceding paragraph intruded upon Plaintiff's solitude and/or private affairs, physically or otherwise, by invading Plaintiff's seclusion as a hotel guest peaceably and lawfully residing at the ESA in Itasca, Illinois.

265.    Defendants appropriated Plaintiff's name, social security number, date-of-birth, driver's license information, vehicle registration number, vehicle tag number, and physical description and likeness which then placed Plaintiff in a false light before a state prosecutor and grand jury inquiry without "reasonable suspicion," "probable cause," or other bona fide purpose. In lay terms, it was a 'fishing expedition' and/or 'dragnet' by a 'lynch mob.'

266.    The Defendants' actions as specified in the preceding paragraphs, would be considered highly offensive to a reasonable person.

WHEREFORE, Mr. Gakuba demands judgment and compensatory damages against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor, acting in concert with Defendants Sandifer and HVP L.L.C. and ESA P Portfolio L.L.C. and because these Defendants

acted in a malicious, willful, and/or wanton manner towards Mr. Gakuba, punitive damages, and such other and additional relief as this court deems equitable and just.

## COUNT XXV

### (State Law Claim for Criminal Battery Injury - Scabies)

267.    Each of the preceding paragraphs is incorporated as if restated fully herein.

268.    Defendants Sandifer, hotel manager, and employee of Co-Defendants HVP L.L.C. and ESA P Portfolio L.L.C. committed battery upon Plaintiff Gakuba as a provider of housing through the rental of long-term occupancy rooms at the hotel property of 1181 North Rohlwing Road in Itasca, Illinois.

269.    Defendants Sandifer and HVP L.L.C. and ESA P Portfolio L.L.C. through the introduction of scabies in unsanitary, filthy bed sheets, linens and bath towels caused Plaintiff to incur pain and suffering  for these uninhabitable conditions.

270.    Plaintiff Gakuba was a hotel guest occupant at 1181 North Rohlwing Road under the property management of Defendant Sandifer, who during the course of Plaintiff's stay, provided Plaintiff with unsanitary and filthy linens, bedspreads, comforters and bath towels which contained scabies that then infected Plaintiff.

271.    Plaintiff Gakuba was deceptively led to believe that the hotel room would be free of any vermin, scourge, or other unsafe and unhealthy conditions which would void or breach the long-term lease agreement between Plaintiff and Defendants.

272.    On or about January 1, 2010 Plaintiff became infected with scabies, or body lice, as a direct and undisputed result of unsanitary, filthy and dirty bed sheets, linens and bath towels given to him by Defendants Sandifer and ESA throughout the duration of his stay at the hotel property in Itasca, Illinois.

273.    Defendants did not deny the occurrence of scabies, and instead offered to move Plaintiff to another hotel room.   Additionally, Defendants dispatched a pest control and/or exterminator upon being emailed and alerted to this scabies infection, which was farcical as scabies live on the host victim once infected.

274.    Defendants refused to refund Plaintiff monies he had paid for the hotel room, stating that he prepaid for the hotel room to obtain a preferred long-term lease rate, and checking-out prior to the 30-day lease term would forfeit what Plaintiff had already paid.

275.    Defendants intentionally or knowingly and without legal justification and by any means caused bodily harm to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants Sandifer and HVP L.L.C. and ESA P Portfolio L.L.C. for compensatory damages, and, because these Defendants acted with purpose and or intent to defraud and deceive Plaintiff by refusing to refund monies and payments made in a wanton and reckless manner, for punitive damages, plus the costs of this action, attorneys' fees, and such other relief as this Court deems equitable and just.

## COUNT XXVI

### (42 U.S.C. § 1983 Claim for Malicious Abuse of Process – the March 2011 Revocation of Pretrial Bond Attempt)

276.    Each of the preceding paragraphs is incorporated as if restated fully herein.

277.    Defendant Officers Kauther, Walker, Mace, Michela, and O'Connor engaged in and devised a fraudulent scheme to have revoked Gakuba's pretrial bond conditions in a state criminal legal proceeding outside their jurisdiction and law enforcement authority by knowingly and falsely providing information to a probation officer of Gakuba's that he had moved, without

any corroboration or confirmation of fact as so stated in this Complaint's Introduction and Factual Statements.

278. These Defendant Officers falsified the reason and nature for their inquiry to Gakuba's whereabouts, to the Extended Stay Hotel, where he had been lawfully and peaceably residing at the time. These Defendant Officers, so named in this count, under "color of authority" then conveyed their false information and fabricated evidence to a probation officer who was reliant upon them to tell the truth.

279. These Defendant Officers did so in order to embarrass, intimidate and harass Gakuba and drive him from his occupancy at his hotel by seeking his remand into custody for a pretrial bond order violation, in state criminal proceeding, for which they were not a party, and which was entirely outside their jurisdiction and scope of law enforcement authority.

280. The Defendant Officers improper purpose was racially discriminate and driven by an animus for Gakuba because of his race and color.

281. The Village of Itasca has at least four registered sex offenders, all of whom are Caucasian. None of whom, on review of public filings and records, have been subjected to police misconduct to the severity and criminality perpetrated by Defendant Officers that Gakuba has been subjected to by them throughout his residency in Itasca, Illinois. The clear aim of Defendant Officers was to drive Gakuba out of town and intimidate and obstruct him from an eventual civil rights lawsuit which the current case happens to be.

WHEREFORE, Mr. Gakuba demands judgment and compensatory damages against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor and because these Defendants acted in a malicious, willful, and/or wanton manner towards Mr. Gakuba, punitive damages, and such other and additional relief as this court deems equitable and just.

## COUNT XXVII

### (42 U.S.C. § 1983 Claim for Malicious Abuse of Process – the October 2011 Revocation of Pretrial Bond Attempt)

282.     Each of the preceding paragraphs is incorporated as if restated fully herein.

283.     Defendant Officers Kauther, Walker, Mace, Michela, and O'Connor, engaged in and devised a fraudulent scheme to have revoked Gakuba's pretrial bond conditions a 2nd time, by knowingly and falsely providing information to a probation officer that Gakuba had moved, without any corroboration or confirmation of fact as so stated in this Complaint's Introduction and Factual Statements.

284.     Defendant Officers, as so named in this count, did so for the ulterior purpose of obstructing his prosecution of a federal civil rights lawsuit, upon being put on notice that they were now the targets of said lawsuit, through several FOIA requests made to the Itasca Police Department's records division.   By intimidating Gakuba and seeking to deprive him of his liberty, these Defendants misused the judicial system and courts to obstruct the administration of justice by Gakuba in prosecuting substantial and repeated civil rights claims against the Defendant Officers.

285.     These Defendant Officers did so in order to embarrass, intimidate and harass Gakuba.   Thereafter, these police officers sought prevent him physically from suing them, through his seizure by the courts in their vain efforts to remand him into custody for a pretrial bond order violation, in state criminal proceeding, for which they were not a party, and which was entirely outside their jurisdiction and scope of law enforcement authority as being extraneous.

286.     On or about November 2011, the state trial court presiding over the revocation of bond motion by the government, dispatched it as "crap" and it was denied.

WHEREFORE, Mr. Gakuba demands judgment and compensatory damages against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor and because these Defendants acted in a malicious, willful, and/or wanton manner towards Mr. Gakuba, punitive damages, and such other and additional relief as this court deems equitable and just.

## COUNT XXVIII

## (42 U.S.C. § 1983 Claim for Malicious Abuse of Process – the January 14, 2012 Fraudulent and Malicious Manipulation of Service of Summons and Complaint on the Village of Itasca)

287.     Each of the preceding paragraphs is incorporated as if restated fully herein.

288.     Defendant Officers Kauther, Walker, Mace, Michela, and O'Connor in conspiracy with Paup, Payne and Ragusin engaged in and devised a fraudulent scheme to obstruct the private process server, who delivered a copy of the Summons and Complaint to the appointed authorized agents (Paup then Payne) who, in fact, accepted service without hesitation or denial, and whom the private process server returned Proof of Service as such, in accordance with Federal Civil Procedures Rule 4.e(a)(2)(C) as so stated in this Complaint's Introduction and Factual Statements.

289.     The Defendant Officers, as so named in this count, knowingly and purposely proceeded to stalk, harass and intimidate the private process server; and ultimately fraudulently issued a falsified traffic violation citation after illegally detaining and seizing him while he was peaceably parked at a gas station.  Plaintiff Gakuba served as a witness to this audacious police

criminal conduct against himself and that of his private process server and took photographs as evidence to prove it.

290.     The Defendant Officers criminal conduct was to fulfill the ulterior purpose and motive of scaring Juth and Gakuba from returning the next business day to effectuate service upon the Village of Itasca's Clerk.  They succeeded in this monstrosity of criminality, resulting in Juth and Gakuba failing to deliver copies of the Summons and Complaint upon the Village of Itasca's Clerk the next business day for fear of their bodily safety, or illegal seizure of them or their property, or detention of their being, by the named Defendant Officers in this Count.

WHEREFORE, Mr. Gakuba demands judgment and compensatory damages against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor and Paup, Payne and Ragusin; and because these Defendants acted in a malicious, willful, and/or wanton manner towards Mr. Gakuba, punitive damages, and such other and additional relief as this court deems equitable and just.

## COUNT XXIX

### (42 U.S.C. § 1983 Claim for Malicious Abuse of Process – False Traffic Stop to Place GPS Tracking Device on Plaintiff Gakuba's Vehicle)

291.     Each of the preceding paragraphs is incorporated as if restated fully herein.

292.     Defendant Officers Kauther, Walker, Mace, Michela, and O'Connor in conspiracy with Paup, Payne and Ragusin engaged in and devised a fraudulent scheme to circumvent the warrant requirement before placing a GPS tracing device on Plaintiff Gakuba's vehicle on January 14, 2012.

293.     Placement of a GPS tracking device, without a warrant, is ILLEGAL.[5]

---

[5] *See United States  v. Jones*, No. 10-1259, U.S. Supreme Court, October Term, 2011

294.     The Defendant Officers, as so named in this count, knowingly and purposely, had fraudulently and maliciously used their law enforcement powers to stop, detain and place a GPS tracking device upon Plaintiff Gakuba's vehicle when Paup had issued Juth a false traffic violation citation as a means towards the ulterior end of attaching a GPS device to Gakuba's vehicle.

295.     Shortly thereafter, the next day in fact, Paup in conspiracy with the Defendant Officers so named in this count, began to track Gakuba's whereabouts, to stalk, intimidate and threaten him from being a witness in the traffic court legal proceedings for which Paup directly commenced as a cause of action, in partnership with Payne and Ragusin.

WHEREFORE, Mr. Gakuba demands judgment and compensatory damages against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor and Paup, Payne and Ragusin; and because these Defendants acted in a malicious, willful, and/or wanton manner towards Mr. Gakuba, punitive damages, and such other and additional relief as this court deems equitable and just.

## COUNT XXX

## (42 U.S.C. § 1983 4th and 14th Amendment Violation – False Traffic Stop to Place GPS Tracking Device on Plaintiff Gakuba's Vehicle)

296.     Each of the preceding paragraphs is incorporated as if restated fully herein.

297.     Defendant Officers Kauther, Walker, Mace, Michela, and O'Connor in conspiracy with Paup, Payne and Ragusin engaged in and devised a fraudulent scheme to place a GPS tracing device on Plaintiff Gakuba's vehicle on January 14, 2012.

298.     The Defendant Officers, as so named in this count, knowingly and purposely, did so to invade Plaintiff Gakuba's privacy through the seizure of his personal vehicle for the

purposes of surveillance which, by design and intent, served to intimidate, harass, and threaten him. No warrant was issued or sought before these Defendant Officers took the actions as specified in the preceding paragraphs of this Count and violated Gakuba's privacy rights under the 4th Amendment as a result.

WHEREFORE, Mr. Gakuba demands judgment and compensatory damages against Defendant Officers Kauther, Walker, Mace, Michela and O'Connor and Paup, Payne and Ragusin; and because these Defendants acted in a malicious, willful, and/or wanton manner towards Mr. Gakuba, punitive damages, and such other and additional relief as this court deems equitable and just.

## COUNT XXXI

**(42 U.S.C. § 1983 Declaratory Judgment That the Village of Itasca's Malicious Prosecution of Plaintiff's Witness Christopher Juth is Unconstitutional, in Bad Faith, and for Harrassment Purposes ONLY)**

299.     Each of the preceding paragraphs is incorporated as if restated fully herein.

300.     The Village of Itasca, through the use of their police department, engaged in a malicious prosecution of Plaintiff's key eyewitness – Christopher Juth – solely in retaliation for the commencement of this lawsuit.

301.     In *Younger v. Harris*, 401 U.S. 37 (1971) a federal court may not hear the case until the person is convicted or found not guilty of the crime unless the defendant will suffer an irreparable injury that is "both great and immediate." Merely having to endure a criminal prosecution is no such irreparable harm. Furthermore, there are three exceptions to Younger abstention:

1. Where the prosecution is in bad faith (i.e. the state knows the person to be innocent)—as applied in *Dombrowski v. Pfister*; or

2.  Where the prosecution is part of some pattern of harassment against an individual; or

3.  Where the law being enforced is utterly and irredeemably unconstitutional (e.g., if the state were to pass a law making it a crime to say anything negative about its governor under any circumstances).

302.    The doctrine was later extended to situations where the state is seeking to execute a civil fine against someone, or has jailed a person for contempt of court. The doctrine applies even where the state does not bring an action until after the person has filed a lawsuit in federal court, provided that the federal court has not yet taken any action on the suit. Moreover, the principle of abstention applies to some state administrative proceedings.

303.    The Plaintiff has no adequate remedy at law at the state court level.

304.    Plaintiff thus seeks the entry of a judgment declaring unconstitutional the Village of Itasca's malicious prosecution of Christopher Juth, a key eyewitness, private process server, and affiant in these proceedings.


**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: June 9, 2012

Respectfully Submitted,
PETER GAKUBA

/s/ Peter Gakuba
_____
Pro Se
P.O. Box 372
Itasca, IL 60143-0372
(443) 608-6257
Email: pgakuba@gmail.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER GAKUBA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11 CV 9090 |
| vs. | ) | |
| | ) | Honorable John Z. Lee |
| BARRY KAUTHER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2012, I electronically filed this Plaintiff's THIRD Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Brook M. Carey
Cassiday Schade LLP
2056 Westings Avenue, Suite 250
Naperville, IL 60563
Email: bmc@cassiday.com
Attorney for Defendants Sandifer, Maymola
& Extended Stay America, Inc.

CHARLES E. HERVAS, Atty Bar No.06185117
MATTHEW J. HAFELI, Atty Bar No. 06303444
*Attorneys for Defendant Village of Itasca*
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156
P: 630-773-4774 F: 630-773-4851
chervas@hcbattorneys.com mhafeli@hcbattorney.com

/s/ Peter Gakuba
_____
Pro Se
P.O. Box 372
Itasca, IL 60143-0372
(443) 608-6257
Email: pgakuba@gmail.com